The next case today, number 231388, Carmen Maldonado-Gonzalez, et al., versus Puerto Rico Aqueduct & Sewer Authority, et al. Will counsel for appellants please come up and introduce yourself on the record to begin. Good morning, Honorable Court. My name is Andres Gorbea. I'm an attorney for the appellants in this case. You may begin. Thank you. In this case, Your Honor, we ask you respectfully to reverse the district court judgment dismissing the case with prejudice pursuant to Rule 12b-6 of the Rules of Civil Procedure. This is a case filed by several Bonafides subscribers of the Puerto Rico Aqueduct Authority, which is a monopoly that controls the water supply in Puerto Rico owned by the government. Most of the time there is no water in the municipality of Morovis. That's what the allegations of the complaint are. There is no water. People get sick. Of course, the court can understand the problems that arise when there is no water for more than 20,000 persons. There's a thousand and something persons that signed to join this case, although the plaintiffs are approximately 12. Counselor, how is the service of water rooted in the nation's history and tradition for substantive due process? Your Honor, let me emphasize the distinction in Puerto Rico. It is a government-owned monopoly. There's no private water service in Puerto Rico. The government owns the raw water supplies in Puerto Rico, which are the rivers and the man-made lakes that could be in Puerto Rico. There is an only single company that deals with the water, and it's Praza. In many communities, people dig wells. I don't know if people dig wells in Puerto Rico. Yeah, there could be wells in Puerto Rico. Some houses have wells, but it is the great minority. Most of the people in Puerto Rico receive water through Praza. How is the provision of water rooted in the nation's traditions and history such that it rises to the level of a fundamental right? Well, the water is a vital element of life. The nation's foundation was based on the – Water is. Yes. But providing water service to folks has never been something that has always been done since the founding of the country or the writing of the Constitution. People weren't – and communities weren't providing water service. Well, water service to houses is a generally recent matter because in the 1800s, there was no such thing, but – Counsel. Yes. Just to focus you, you're making a substantive due process claim here, of course, but it would help to clarify, and I think this is what Judge Thompson's questions are getting at. You're not asserting a liberty claim under the substantive due process line of analysis. You're asserting a property claim that you've been deprived of your property right to water. Is that correct? That's correct, Your Honor, even though we do not – we're not assessing a procedural due process claim because these people did not get their accounts terminated or anything. They just don't receive water. Right. So you're making a substantive claim based on your property right as paying – representing paying customers to the water and that you were deprived of it in an arbitrary way. In a reckless way, in a way that shocks the conscience. And that's the key, right? You agree that's the key. You have to meet that standard as to the deprivation of this right. The property right, Your Honor, I would like to state that this court has ruled that it is in question in procedural due process claims. So we do understand that we have a property right recognized by the court, by the Supreme Court, and also by this court in Marrero, which is cited in our brief. But for substantive due process claims, and this court has ruled that in Erazo v. Martinez, which is cited in our brief, it's not necessary to raise a property interest. Although we have raised it here, and the court – and the district court has acknowledged that there – What is the content of shocking conduct? Having no water, Your Honor. Conscience shocking. No, I don't – I understand how desperate the situation must feel for the people that are not getting the water. I didn't mean that to be the question. I'm sorry. The question is what is the claim that you're making what they're doing? One version would be it's difficult to get them water. Their service is irregular. They try and work on it every day, but they're unable to do it. That might not be conscience shocking, notwithstanding that from the perspective of the people not getting the water, the situation is no less desperate. A different version would be we've decided to give no water to this community. That might be conscience shocking, right? Right. So where on the spectrum does this fall, and how can we tell where it falls with enough clarity that we could say that there was a claim? So in the complaint, Your Honor, there are several allegations addressing the specific examples of why there is no water. There's always a different excuse, and that's what the complaint alleges. But there's also a 200,000-gallon tank in Morovis that's not being used for years, and that's alleged in the complaint. There's also allegations regarding that the valve has been closed, and people just go there and open them, and there's water coming to the houses. So there are many specific allegations. Well, not many, but there are several regarding why this is conscience shocking, aside from the fact that having no water in a monopoly of water that exists in Puerto Rico, people having no water when there's no emergency, when there's no hurricane, when there's nothing, when there's the sun really bright, there's still no water for weeks. There have been communities in Morovis that have been 42 consecutive days without water, Your Honor, and we believe that's conscience shocking. And this court has ruled that not all substantive due process cases have to be physically intrusive and have to deal with a beating of police or something, although we do allege that this is a physically intrusive situation because having no water really affects the physic of the people and the health of the people. So this court has ruled that not necessarily it has to be physically intrusive to successfully allege a claim of substantive due process. Counsel, based on the allegations in your complaint, if you had to sort of choose one fact that you've alleged that you think is your best allegation to establish that the conduct here is conscience shocking, what would you point to? Your Honor, the fact that people in Puerto Rico are obligated to hire water services from PRASA, which is a monopoly. They don't have any other option, and PRASA provides no water to the people. Most of the time in Morovis there is no water. We believe that is conscience shocking. If we thought that under the current precedent that was not likely to be the case. I'm sorry, Your Honor. If we thought under the current precedent that that set of facts alone was not likely to meet the standard, is there a fact in the complaint that you would point to that concerns the particular conduct of the monopoly, aside from just being a monopoly and aside from water provision being as sporadic as it is, about the nature of their conduct in responding to it that you would point to? Of course, Your Honor. The complaint has allegations dealing with what the municipality of Morovis has done with PRASA administrators. They have met them numerous times, and nothing has been done. There are also allegations of the pump, the valves in the water station being closed. And when there's no water, they say, what's going on with the water? And they go there in the complaint, and they just seem to have to open it. So something's going on. We don't know what's going on. But there is something going on that they're closing the valves of the water, and that's alleged in the complaint. There's also alleged that the existence of the 200,000-gallon tank not being used, and that the PRASA did not even know of its existence. And also allegations that the municipality of Morovis has reached out to PRASA, asking for them to be connected from the super-tube, which is a huge tube that runs along the north of Puerto Rico. And they have said that they have to exhaust other measures prior to connecting the Morovis to the super-tube. So there are also allegations of omissions that PRASA has been incurring that they are not solving, which is a very important matter, Your Honor, for the people of Morovis, as you can understand, is having water. And we're not asking for uninterrupted water service or water all the time, as the district court incorrectly mentioned in its ruling, because that's not what the allegations are. We're just asking for adequate water service, which is a monopoly, and these are bona fide subscribers who pay their invoices and who have a property right. That's needed for substantial due process claim, but we do have it anyway. And we understand that not having water, when it is a government-controlled corporation, which is a monopoly, has to be conscience-shocking. And if it did not shock the conscience of the district court, we ask that you do the exercise and rule that the complaint should not have been dismissed under Rule 12b-6, that no set of possible allegations could give rise to a remedy for the plaintiff. We believe that is incorrect and that the ruling should be reversed. Counsel, the district court concluded that the claim here should have been brought under the First Amendment rather than the Fourteenth Amendment Substantive Due Process Clause, and that was one of the reasons why the district court ended up granting the motion to dismiss. Can you comment on that analysis and if you think the district court was wrong and why? Puerto Rico, as you may know, has a lot of political discrimination cases. We did not allege a political discrimination or a politically motivated action from PRASA because we did not want to give the case that angle. We wanted it to be because the lack of water affects everyone, not only political parties or members of parties. So we asked the court to focus on the Substantive Due Process Claim. We did include a sentence in the complaint, which the district court apparently gave a lot of importance, saying that the major was re-elected under the PDP, which is a fact. She's from the PDP party. She was re-elected. We're not raising political discrimination or any political basis for dismissal. So the court understood that we should have raised a political claim under the First Amendment. That's not what we're alleging here. We're alleging a negligence conduct that results in the people not having water, more obvious most of the time. This is not a political – although it could have some political – that's not what we're alleging. So, again, I just ask you on the spectrum. I'm having a little trouble figuring it out. So we've made clear negligence alone is not enough.  And deliberate spiteful-type conduct could be enough. We're right here. We're in reckless indifference. We're in deliberate – And is that – I forget. Is that alleged in the complaint? Of course. Yeah. And what would you say is your best case? Not on what shocks the conscience, but what constitutes deliberate indifference and why this case is reflective of that kind of level of indifference to something important. Well, in the case of reckless indifference, there are some alleged in our brief. For example, there's one in which there were some prisoners that were not given water for three days and the court concluded that they had a plausible substantive due process claim as well as another claim under other constitutional provisions. That's the case of – I'll let you know in a second – Hardeman versus County of Lake. It's on page 26 of our brief. That's a procedural due process claim case, isn't it, Counsel, about conditions of confinement? It is – it's not a procedural due process, but it is a – when you give punishments. But on the deliberate indifference, I really was asking, in the shock the conscience framework, what is the best case in which – I know we have suggested, but I don't know that we've ever held, have we, that deliberate indifference can satisfy the shock the conscience standard, or have we held that? Of course you have held that. This court has held that. And it is in the cases – the wording, that wording, deliberate indifference, has been used by this court to support substantive due process claims. Okay. Thank you. Okay. Thank you, Your Honor. Counsel, will attorneys for Appoli please come up and introduce yourself on the record to begin? I believe you're arguing for eight minutes. Is that correct? Yes. Good morning, Your Honors. Can I take a brief moment to acknowledge Judge Selya? If you make your microphone a little bit closer to you. Is that better?  Since Judge Barron mentioned the passing of Judge Selya, I just wanted to take a moment to acknowledge Judge Selya. I wanted to offer my condolences to you as his colleagues. I had the pleasure and the privilege of arguing many times before Judge Selya. I learned quickly that just because he was leaning back on his chair and looking at the ceiling didn't mean that he wasn't aware and processing every single word you were saying. And his questions were evidence of that. He also wrote some of the most quotable and entertaining opinions that I've ever read. I learned many new words through his opinions like Salma Gundi, among many others. And I just wanted to take a moment to acknowledge him, offer my condolences, and say that he will be missed. Thank you. I appreciate it. Now may it please the court. Attorney Herman Riquejo on behalf of Apollice, Puerto Rico Aqueduct and Sewer Authority, which I will refer to as PRASA. I'd like to start, I think most of our arguments are clear from the brief, but I'd like to start by correcting some of the things that brother counsel said. Or to clarify, just to be clear, there are no allegations in the amended complaint that the water made consumers sick in the municipality. There are also no allegations in the amended complaint that bring in, whether this was a monopoly or not, how that factors into this claim. There are no such allegations. Before the district court, we're now in appeal, so I would suggest that any argument using that was waived. Also, brother counsel mentioned, I'm sorry, that there are no allegations in the amended complaint talking about political motivation. I beg to differ, and I'd like to point the court to paragraphs 20, 21, and 36 of the amended complaint, where it is at least suggested that the alleged conduct in the amended complaint was politically motivated. Counsel, if I could follow up on that issue, I understood the district court to say, to conclude, that because the First Amendment claim was potentially available, that's what should have been pled instead of a substantive due process claim based on some of our case law and the Supreme Court's case law that says focus on the specific constitutional provision that applies before, if there's something more specific than the 14th Amendment, focus on that rather than turning to substantive due process. So I understand why the district court was doing that analysis. But the question I have for you is, was it correct to think that all of the plaintiffs could have a potential First Amendment claim? Because the way I read the complaint, I did see the allegations that you mentioned. They were really focused on potential political reprisal against the mayor. And I'm just curious if you could answer if you think that the other plaintiffs here, including the individual subscribers, could have even brought a First Amendment claim. Your Honor, to be very frank, I did not analyze. I did not bother to evaluate whether any of the plaintiffs could have had a claim under any other provision. It could well be that if they have a claim, and I'm not saying that they do, but if they have a claim, that they chose the wrong forum, the wrong venue, the wrong avenue, the wrong legal provision. I think what I just – I was trying to ask something slightly different, which is that if the individual plaintiffs – I'm sorry, the individual subscribers who are plaintiffs do not have a First Amendment political reprisal claim because they're not the mayor, they're not the political head of the community, if they don't have a First Amendment claim, was the district court potentially wrong in putting aside their substantive due process claim on the theory that they did? Do you understand my question? I'm sorry, there's a few double negatives in there. But he seemed to – the district court seemed to conclude that everybody who was a plaintiff here could have asserted a First Amendment claim, and therefore, the substantive due process claim was wrong. But I'm asking whether that was incorrect because I'm not sure how the subscriber plaintiffs would have had a First Amendment claim. I'm not sure, Your Honor. Maybe they could have had some sort of tort claim in local court instead of something like this. But the words you are talking about from the district court's opinion are but an alternative of everything else in the opinion because the district court did address the substantive due process claim and obviously determined that they cannot, under any circumstances with these allegations, establish a substantive due process claim. If I may, I'd like to address the fact that the plaintiff – the appellant's claim that they have a property interest that is conferred to them by local statute 22LPRA section 159. According to the appellants, this statute establishes their property interest in continued water service. However, there's nothing in section 159 that guarantees that there will in fact be available water at all times or even most of the time or that PRASA has an obligation to provide water for a specific or predetermined amount of time every month. Counsel, just to clarify, the district court didn't reach the type of analysis that you're doing right now. It didn't actually evaluate whether there was a protected property right under the Constitution, right, because it looked just at the shocks of the conscience inquiry? If I remember correctly, I think you're right that the district court went straight to the shock of the conscience and all the other factors, but since appellants brought it up in their brief, I'd like to address it for the court to finish up with section 159. Can I just ask about that? I'm a little confused as to whether that's the force or not. There definitely is the shock of the conscience analysis, but I thought there was this discussion of why the procedural due process cases finding the property right weren't useful cases for determining whether there was a property right for substantive due process because those were about your rights to have it terminated in a not arbitrary manner as opposed to the right to the service itself, and I thought the court was saying that those cases don't support the notion that there is a right to the service itself. Exactly, Your Honor, and one of the things that the appellants do to try to establish their claim is that they apply procedural due process terms, principles, and analysis to their substantive due process claim, and they're really mixing apples and oranges. We've submitted, I'm not sure if I have the time, but we've submitted several cases from the Third Circuit, from the Sixth Circuit, explaining in so many words why just because you have something that might fall under a procedural due process might not be a substantive due process claim. Is your understanding both that issue and the shock of the conscience are before us? Yes. Those are arguments made by the appellants before this honorable court. Your position is that the regs that you're citing don't provide a property interest to the individual subscribers to the service. Correct, Your Honor. What are they paying for? I understand the district court to be trying to distinguish between the right you had to that service from that entity and the impermissible termination of the service. If they want to bring a termination of service claim under Memphis, that would be a procedural due process claim, and they would probably have a property right, and then we would look at whether these facts amounted to termination that was arbitrary. That's not their claim. No. Their claim is they have a substantive due process right to water service, and if I understood, the district court seemed to be trying to say the contracts from the water service provider that give rise to the procedural due process right don't give rise to a property right in water service itself for purposes of due process clause. That is correct, and that is what every… But then if that's – why not? Because of the distinction between substantive due process and procedural due process. The first question, is there a property interest? And, for instance, in the employment arena, if someone has government employment that's arbitrarily deprived – trying to figure out is there an interest in the employment, and what we're trying to figure out here, why isn't there if they contract and have water services, why wouldn't they have a property interest in the service? Because it's not a property interest that has been recognized by any legal authority. We look to state law and other areas of the law that establish property interest. There is no state law that gives them a property interest in water service. Well, what about the contract where they pay you every month for water and don't get it? They might have a contract lawsuit in their hands. This is the puzzle. Not every procedural due process case is a substantive due process case. So an arbitrary termination, which could give rise to a procedural due process claim, doesn't necessarily in and of itself give rise to something. We're trying to get your help in trying to parse through when it does and when it doesn't. And we also understand that every property interest isn't necessarily a constitutional substantive due process issue, but where do we draw the line? Well, when substantive deals with interference with a fundamental right itself, regardless of whether the procedure is fair or not, procedural due process. Counsel, I'm not sure that's quite right. That is true. The fundamental rights analysis comes under the liberty prong of the substantive due process clause, and here we're focused on the property prong. And I think our question is just, you know, they have a contract. There's the regulations. They're paying for water. Why, under Puerto Rico law, do they not have a property interest in adequate water service that they're paying for, you know, every month or whatever the appropriate payment plan is? Well, because it hasn't been recognized by any legal— But they're asking us to recognize it. So I guess the question for you is why shouldn't we? Because no court has ever recognized this as a substantive due process. Was there a precedent saying we can't? There is nothing saying that you can't. Well, then what do we do? That's why we offer opinions from the Third Circuit, from the Sixth Circuit, who have held in so many words, yes, this can give you a procedural due process claim, but not a substantive due process claim. And they say so in so many words. If we wanted to bypass this, one way you've offered that we could would be to just focus on the shock to conscience analysis. Sure. Because even if we assumed there was the right, it still doesn't constitute constant shocking behavior. Your opponent says it's pretty shocking because this is a community that can't get water on any kind of regular basis, no matter how many efforts they make to try and get it. I mean, what's wrong with that? It doesn't meet the standard. What is the standard you have in mind? Do you think it just shows negligence? Because I agree with you that the cases are clear that if it's just negligent conduct, that's not conscience shocking. But I think the thrust of the plaintiff's allegation or argument to us is that their allegations show a lot more than negligence, given how repeated the efforts to get it back on are, given the seemingly simple fixes that they allege that could be made that individuals make that provide water. So it's not plausible to think this is just they're trying, but they didn't do it right. Instead, he says it rises to a level where they just don't care. Let me be very clear so I don't come off the wrong way. I don't want to sound like I don't have empathy for someone who's without water. I myself have experienced being without water service for a week. So I've been there, done that. Again, I can have empathy for someone who doesn't have water service. But it just falls woefully short of when you compare it with cases evaluating what meets that standard of conscience shocking behavior. This is what I want to understand. There's two different aspects of it. One is the actual nature of the deprivation is such that it can't meet it. So that'd be one version of what you're saying. I don't know that's what you're saying. The other version is even though if, in fact, for years, every time you went to them, they said, you know, we don't care about you. We're not giving you water. At some point, we might say that's a significant enough deprivation that if the behavior justifying the denial could raise, rise the level of contract, assuming it's a property right. If it's not a property right, we don't even get there. But I think what we're asked, what I'm asking is they allege this is not just negligence. They're alleging that the level of indifference to the deprivation is such that it might be sufficient to be conscious shocking because it seems deliberate in the indifference. What's your response to that? My response is I have to acknowledge that the shock to conscience test is imprecise and standardless to use this court's own words. And that's why we're in this position where we have to gauge where does this fall in the scale of what's been determined conscious shocking and not enough for conscious shocking. And because this is imprecise in this court's own words, what I can offer is submit to the court based on the examples that we've offered in our brief, that this falls much closer to the cases where it has been held that conduct was not conscious shocking than it is to those cases where courts have held the conduct is conscious shocking. And since we're on this, if I may have just one or two more minutes to offer some perspective. I think the district court did well in using Girton as a point of reference to illustrate the level of conscious shocking conduct needed for a substantive due process claim. And to contrast that with the appellant's claims here. And the aspects of the Girton decision that the district court accurately highlighted, because the appellants say that the district court misread, misinterpreted Girton, it did not. Two of the most important aspects of the Girton decision that the district court highlighted were number one, the Girton court found a substantive due process violation because the official's conduct turned the resident's voluntary consumption of water into an involuntary and unknowing contamination of their bodies, of their bodily integrity. And then the Girton court specifically distinguished the failure to provide water, which does not invade bodily integrity, with secretly and intentionally providing contaminated water, which clearly invades bodily integrity. So the district court, using Girton in part, determined that there was no such invasion here, that this does not approach physically intrusive conduct, and determined that they did not have a substantive due process claim. Thank you. Thank you, counsel. Thank you very much for your time. Attorney Omar Andino-Figueroa, you have a seven-minute argument. Yes. Good morning, Your Honors. Omar Andino-Figueroa. May it please the court. I'm arguing on behalf of Doriel Pagan, executive director of PRAZA. I just wanted to start by adding some stuff to my board of counsels, clarifying some arguments from plaintiffs and adding some arguments to PRAZA's brief and an argument here. The first thing that I want to say, and this is something that came up in Your Honor's questions, I think specifically Chief Judge Barron's questions, is that I don't think the court needs to reach that there's a property interest here. I think that the court, as this court has said in multiple occasions, you can go directly to the Chuck Conscience inquiry, as the district court did in this case. Also, I want to say that I don't see any possible deliberate indifference argument or allegation here. I just, even from the exhibits and from the complaint, it seems that both PRAZA and the executive director are hands-on on this issue, and it's a very, very complex issue that has been creating a water crisis in Morovis for years, and both the executive director Pagan and PRAZA acknowledge and are working towards solving that problem. So, from the same exhibits that plaintiffs have included in their complaint, we can see multiple reports that acknowledge this issue. So, I don't think there's a possible deliberate indifference allegation in this case, even from the amended complaint that plaintiffs brought. Counsel, just to follow up on that, I mean, one of the allegations that the plaintiffs made, just to provide one example, was that when they hired the individual who used to work at PRAZA, and he went to the various facilities and found that simple fixes would have provided water to the community, and that valves were off, or the generator had been turned off, and no one could explain why, the mayor asked PRAZA to investigate and determine what had happened, but never heard back. And I had read the complaint to make a number of allegations like that, that concerns were raised that were very specific of responses requested, but no response was provided, and the community continued not to have, according to the allegations, the community continued not to have water most of the time, is what the complaint says. That seems different from what you've just said, which is that the exhibits show responsiveness. I thought the allegation was the opposite, that there was no responsiveness. Could you address that? Sure, Your Honor. I do acknowledge that the complaint has multiple allegations, including what Your Honor said about an employee, a contractor from the municipality, going there and talking to employees. But, yes, that's an allegation from the complaint, but also the complaint contains other evidence that shows that this is a very, very complex issue, and that PAGAN and PRAZA are working on solving it. Even tweets from PRAZA and PAGAN saying sometimes it's just like nature, it's like a lot of fogging or stuff there, that it's sometimes out of control, and nature just makes it difficult for water supply to be adequately served. And, yes, it's true, I do acknowledge that the complaint has those allegations, but I don't think they're enough and possibly enough to shock the conscience. I do think that, at most, if we take them as true for purposes of the 12BC analysis, at most, that would be negligence. Omissions from PRAZA and PAGAN that we deny that, obviously, they're not working towards solving the problem, but, at most, I think that's mere negligence, and mere negligence is not enough to shock the conscience. That would be another court or another even state court claim that it's not before this court. Is there a part of the record, in terms of what the district court considered at the 12B6 stage, either in the complaint or the exhibits, that shows the responsiveness of PRAZA? Can you point us to any specific sites in the appendix that you think, because tweets saying that it's, you know, mother nature and there have been blockages, don't just, you know, to say, don't sound responsive that we're going to be fixing the problem. They just seem to be saying, you know, there are problems, but it's not indicating how the problem is going to be solved. So, is there a part of the record that actually, in your view, supports your client being responsive to the allegations? Yes, Your Honor, I do think the record, and it's true, there's a lot of tweets, because that's the way the sewer authority communicates with the community and provides information. But I do think that some of the tweets talk about generators being provided and also water tanks provided to the community. And I'm almost certain that the exhibits and even in some places in the amended complaint, it showed that water tanks were provided. And there's communications between PRAZA and PAGAN constantly, as the record shows, trying to solve the problem. But at this stage, right, it's just how the allegations are written, and obviously in the evidence that the plaintiffs submitted, because we are not at a summary judgment stage. We don't have more evidence at this stage. If there's no more other questions, I rest on my brief and request the support to affirm the district court's decision. Thank you, counsel. That concludes arguments in this case.